UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **DVEIL DESHON FREEMAN** | * | **CIVIL ACTION NO. 18-0584** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **DARRELL VANNOY, WARDEN** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Petitioner Dveil Freeman, an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 27, 2018. [doc. # 1]. Freeman attacks his convictions for second degree murder and seven drug related offenses and the sentences imposed for each crime by Louisiana's 4th Judicial District Court, Ouachita Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### Background[1]

On May 13, 2010, Freeman was charged by bill of indictment with the following offenses: (1) second degree murder of David Green; (2) possession of cocaine with intent to distribute; (3) possession of N-benzylpiperazine with intent to distribute; (4) possession of 400 grams or more of cocaine; (5) conspiracy to distribute a Schedule I controlled dangerous

---

[1] The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal, *State v. Freeman*, 50,282 (La. App. 2 Cir. 4/13/16), 194 So. 3d 1, 5-14. Accordingly, only the history relevant to the pending petition is included.

substance ("CDS"); (6) conspiracy to distribute a Schedule II CDS; (7) conspiracy to commit transactions involving proceeds from drug offense; and (8) transactions involving proceeds from drug offense.

On July 7, 2010, Freeman filed a motion to suppress, seeking to suppress all physical evidence seized as a result of a search of the rental vehicle he had been driving when he was arrested, and all statements given by Freeman to law enforcement concerning such evidence. Without first obtaining a warrant, the Louisiana State Police ("LSP") had placed a global positioning system ("GPS") device to the frame of the vehicle with a magnet. On January 30, 2012, Freeman filed a supplemental motion to suppress, based on the then recent United States Supreme Court case, *United States v. Jones*, 565 U.S. 400 (2012), wherein the Court held that the attachment of a GPS device to a vehicle and the subsequent monitoring of the vehicle's movements on public streets is a search within the meaning of the Fourth Amendment. Following hearings on the motion to suppress and Freeman's subsequent motion to reopen suppression evidence, the trial court signed a judgment denying Freeman's motion, without providing any reasons.

Freeman's jury trial began on March 12, 2014. On March 19, 2014, the jury found Freeman guilty as charged on all eight counts. On August 8, 2014, the trial court adjudicated Freeman a third felony offender and sentenced him to life imprisonment at hard labor without benefits on each one of Counts One through Six and Count Eight; and to five years on Count Seven. The court ordered Counts Two through Six and Count Eight to run concurrently with each other and with Count Four, which was to run consecutive to Count One. *Freeman*, 194 So. 3d 1.

Freeman filed a direct appeal in the Second Circuit Court of Appeal, raising two issues: (1) trial court error in denying the motion to suppress; and (2) insufficient evidence to support a finding of guilt on the second degree murder charge. On April 13, 2016, the Second Circuit affirmed Freeman's convictions and sentences. *Id.* On May 1, 2017, the Supreme Court of Louisiana denied Freeman's subsequent application for writ of certiorari and/or review. *State v. Freeman*, 2016-0927 (La. 5/1/17), 220 So. 3d 743. Freeman did not file a petition for certiorari in the United States Supreme Court, and he did not seek collateral review in the state courts. [doc. # 1 ¶¶ 9(h), 10].

On April 27, 2018, Freeman filed the instant habeas corpus petition, arguing: (1) his motion to suppress was wrongfully denied because officers conducted an illegal search when they placed a GPS tracking device on his vehicle without a warrant; and (2) the evidence presented at trial was insufficient to support his conviction of second degree murder. (*Id.* ¶ 12). The State filed a response on July 9, 2018. [doc. # 9].[2] On July 31, 2018, Freeman filed a memorandum of law in support of his petition. [doc. # 16]. This matter is ripe.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief of a state prisoner. The AEDPA limits how a federal court may consider habeas claims. After a state court has adjudicated a prisoner's claims on the merits, federal review "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563

---

[2] The State also submitted over 3,000 pages from the state court record. [*See* docs. # 9, 10, 11]. For ease of review, references to the record are cited as "Record at [page #]," with the page number corresponding to the number inserted by the State.

3

U.S. 170, 181 (2011). An application for a writ of habeas corpus should be granted if the petitioner shows that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740 (citations and internal quotations omitted). "[U]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741 (quoting *Williams*, 529 U.S. at 413).

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). AEDPA has put into place a deferential standard of review, and a federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for

4

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## Discussion

### I.  Motion to Suppress

LSP began investigating Freeman and his co-conspirators for drug trafficking offenses in 2008. One of the co-conspirators, Ivory Mock, agreed to assist police in the investigation. In February and March of 2010, Mock informed the police that Freeman would be receiving shipments of drugs. In March 2010, Mock rented a white Ford Explorer for Freeman, at Freeman's request. Mock informed officers of the rental and, without first obtaining a warrant, officers placed a GPS device to the frame of the vehicle with a magnet. LSP monitored the GPS device and were able to track Freeman's movements and eventually arrest him for drug related offenses. *Freeman*, 194 So. 3d at 5-7.

Freeman argues that LSP's attaching a GPS device to his vehicle, without a warrant, in order to track his location, violated his Fourth Amendment rights, and the trial court should have suppressed the evidence seized as a result of the unlawful search. [*See* doc. # 16 at 9, 17]. He claims that he had a reasonable expectation of privacy and took steps to ensure that his movement in the vehicle was private. (*Id.* at 10). Further, he claims that the evidence would not have been inevitably discovered and the good faith exception does not apply. (*Id.* at 12-14).

The State argues that (1) Freeman has no standing to challenge the search because he was not in lawful possession of the vehicle; (2) all evidence seized would have inevitably been

discovered; (3) *United States v. Jones* was decided after the search, and under the good faith exception, officers were entitled to rely on then-current precedent; and (4) *United States v. Knotts*, 460 U.S. 276 (1983) and *United States v. Karo*, 468 U.S. 705 (1984) are the controlling law. [doc. # 9 at 18].

Fourth Amendment violations are not cognizable on federal habeas corpus review. *Brock v. Cain*, No. 15-CV-2586, 2018 WL 2171479, at *2 (W.D. La. Mar. 21, 2018) (citing *Stone v. Powell*, 428 U.S. 465, 494-95 (1976)). In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. An "opportunity for full and fair litigation" means just that: "an opportunity." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (citations omitted). To satisfy this requirement, the state need only provide the process "whereby a defendant can obtain full and fair litigation of a fourth amendment claim." *Id. Stone* "bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Id.*

The State did not address *Stone* in its brief, but a court "is obliged to apply *Stone* even if it must be raised sua sponte." *Brock*, 2018 WL 2171479, at *2 (citing *Davis v. Blackburn*, 803 F.2d 1371, 1372-73 (5th Cir. 1986)). In this case, Louisiana law provided Freeman with a full and fair opportunity to litigate his Fourth Amendment claim. Freeman filed a motion to suppress on July 7, 2010, and filed a supplemental motion to suppress on January 30, 2012. (Record at 252-53, 581-82). The trial court held hearings on the motion to suppress on January 31, 2012, and February 1, 2, 3, 6, 7, 9, 10, and 14, 2012. (*See id.* at 588-89). On November 14, 2012,

Freeman filed a motion to reopen suppression evidence, and the court trial court held additional hearings on March 5 and 28, 2013. (*Id.* at 731, 748, 750). On October 8, 2013, the trial court denied Freeman's motion to suppress. (*See id.* at 861). Freeman sought a supervisory writ with the Second Circuit Court of Appeal, which was denied on February 27, 2014, on the basis that Freeman would "have an adequate remedy on appeal in the event of a conviction." (*Id.* at 839-60, 868). Following his conviction, Freeman raised this issue on direct appeal. The appellate court reviewed the record and held that, even if Freeman had standing to contest the search, "the trial court did not abuse its discretion in denying Defendant's motion to suppress based on the use of the GPS tracking device." *Freeman*, 194 So. 3d at 20. The appellate court noted that the "evidence and testimony presented at the suppression hearing and at trial establish[ed] that the initial stop, arrest, search and seizure were all proper." *Id.* at 22. Further, the evidence seized from Freeman's vehicle was admissible under the inevitable discovery doctrine and the good faith exception applied. *Id.* at 20. Because Freeman had a full and fair opportunity to litigate his Fourth Amendment claim, he is not entitled to habeas corpus relief on this ground.

Accordingly, this claim should be **DISMISSED**.

**II.     Sufficiency of the Evidence**

Freeman claims there was insufficient evidence to support his conviction for second degree murder of Green because there were no eye witnesses to the murder; there was no evidence linking Freeman to the murder; and the Second Circuit Court of Appeal could not determine whether Freeman was the perpetrator "OR" a principal to the murder. [doc. # 1 at 17; doc. # 16 at 20-26]. The State claims that there was overwhelming evidence of Freeman's "motive and guilt in this homicide"; the jury believed the State's witnesses and rejected

Freeman's "outlandish claims and lies"; and the State "proved guilt beyond a reasonable doubt." [doc. # 9 at 26].

Freeman argued this same clam on direct appeal in the state court, and the Second Circuit Court of Appeal affirmed his convictions and sentences. *Freeman*, 194 So. 3d 1. A state court's determination that there is sufficient evidence to support a conviction will not be overturned unless it was contrary to or involves an unreasonable application of clearly established federal law as set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Williams v. Puckett*, 283 F.3d 272, 277-78 (5th Cir. 2002). The clearly established law with regards to the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements [of the crime] beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 319). The *Jackson* inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

On appeal, the Second Circuit applied the *Jackson* standard in finding that the evidence presented at trial supported Freeman's conviction. The court first referenced the definitions of second degree murder, specific intent, and principals:

> Second degree murder is the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1).
>
> Specific intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the

8

> circumstances surrounding the offense and the conduct of the defendant. The determination of whether the requisite intent is present in a criminal case is for the trier of fact.
>
> Specific intent to kill or inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. Further, the discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person.
>
> La. R.S. 14:24 provides that "all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

*Freeman*, 194 So. 3d at 24 (citations omitted). The court then set forth the testimony and evidence presented at trial and reasoned as follows:

> The evidence presented at trial was sufficient for the jury to find Defendant guilty of second degree murder. Defendant's identity as the perpetrator is the only issue raised by the defense.
>
> At trial, the state presented the eyewitness testimony of Burks, Morales and Bennett, who all positively identified Defendant, in a photographic lineup and in court, as being in the area around the apartment complex immediately following the shooting. Burks, who lived next door to the victim, testified that, after she heard the gunshot, she looked outside and saw Defendant standing under the light pole by the stop sign on the corner. Morales and Bennett testified that as they were walking to the apartment complex, Defendant stopped them in the alleyway and asked if they had seen anything. Although positive identification by only one witness is sufficient to support a conviction, none of the witnesses identified Defendant as the shooter.
>
> The state presented additional circumstantial evidence implicating Defendant's involvement in the murder. While Defendant was in jail on the drug charges, he called a friend and accused the victim, Green, of providing information to the police regarding Defendant's drug activity. Also, Young and Percy testified that, several days before his murder, Green was acting nervous because he had a confrontation with Defendant and told them that Defendant had accused him of being the snitch.
>
> Defendant challenged the credibility of the state's witnesses and relied on the alibi testimony provided by his girlfriend. He also argued that there was no physical evidence definitively linking him to Green's murder.

9

> After hearing all of the evidence, the jury chose to believe the testimony of the state's witnesses and rejected Defendant's alibi defense. This court does not assess the credibility of witnesses or reweigh evidence. Considering the evidence in a light most favorable to the prosecution, we find that the state sufficiently negated any reasonable likelihood of misidentification and that the jury reasonably found that Defendant was the perpetrator of, or a principal to, the second degree murder of Green.

*Id.* at 24-25.

The undersigned has reviewed the transcript of Freeman's trial and finds that the state court did not unreasonably apply the *Jackson* standard in determining that the evidence presented at trial was sufficient to find Freeman guilty of second degree murder. As the Second Circuit noted, multiple witnesses identified Freeman, in a photographic lineup and in court, as being in the area around Green's apartment immediately following the shooting. (Record at 1507-09, 1512-13, 1543-47, 1655-58; *see* Exs. S-61–S-64, [docs. # 18-2–18-5]). Although no witness identified Freeman as the shooter, there was additional circumstantial evidence implicating Freeman. Specifically, while in jail on the drug charges, Freeman called a friend and discussed Green. (Ex. S-56, [doc. # 19]); *see* Record 1579-80). He stated, about Green, "who the f*** could do me like this, break me like this, f*** my life up like this," and that he knows Green "did it . . . I don't really know for a fact, but if I was a jury I would convict his a**. There's enough evidence on him to convict him" because there is stuff only Green knows about." (Ex. S-56). Further, two witnesses testified that they had spoken with Green in the days leading up to his death, and that although Green was usually happy and full of energy, he was acting a bit upset and nervous. Green had also relayed that he had a confrontation with Freeman, and Freeman accused Green of being a snitch and setting him up on the drug charges. (Record at 1617-19, 1631-34).

10

The defense presented Freeman's girlfriend as an alibi witness. She testified that on the night of the shooting, she had been with Freeman the entire night. (*Id.* at 1728-33). Freeman also testified and stated that he was friends with Green; he originally thought Green set him up but later he became suspicious of someone else; and that on the night of the shooting, he went to a club with his girlfriend and was with her the entire night. (*Id.* at 1775, 1802-12).

The appellate court determined that based on the testimony and evidence presented, the jury's choice to believe the State's witnesses and reject Freeman's defense was reasonable. The undersigned agrees. A reasonable jury could have found that Freeman had the specific intent to kill or harm Green based on the testimony of the State's witnesses and that the State proved each element of the crime of second degree murder. Thus, in affirming Freeman's conviction for second degree murder, the state court did not unreasonably apply clearly established law.

Accordingly, this claim should be **DISMISSED**.

## Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that the petition for habeas corpus filed by Petitioner Dveil Freeman [doc. # 1] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at

the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 10th day of December 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE